COUNXEL

*2222 S. Dobson Rd Suite 1104*
*Mesa, Arizona 85202*
*Office: (480) 536-6122*
*www.counxel.com*
**For Court Use Only: docketing@counxel.com**
Patrick Welsh (035861)
PWelsh@counxel.com
*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cheryl Kollin, in her individual capacity; Kollin Medical, LLC, an Arizona limited liability company; Brio, Inc. a Nevada corporation, derivatively,<br><br>         Plaintiffs,<br><br>vs.<br><br>Brio, Inc., a Nevada corporation; Rusty Roberts, an individual; Jane/John Doe Roberts, his spouse; Nichole Roberts, an individual; Jane/John Doe Roberts, her spouse; Jason DeMartino, an individual; and Jane/John Doe DeMartino, his spouse,<br><br>         Defendants. | Case No.<br><br>**COMPLAINT**<br>**(JURY TRIAL REQUESTED)** |

Plaintiff Cheryl Kollin, by and through undersigned counsel, brings this suit individually and derivatively on behalf and in the right of Kollin Medical, LLC ("Kollin Medical") an Arizona limited liability company, and Brio, Inc. d/b/a Brio Medical, a Nevada corporation, ("Brio") and hereby files this Complaint against Brio and the individuals Rusty Roberts, Nichole Roberts, and Jason DeMartino (each, a "Defendant", and collectively, "the Defendants") for breach of contract, violation and retaliation under the Fair Labor Standards Act, violation and retaliation under Arizona Revised Statutes §

23-363, *et seq.*, unjust enrichment, breach of good faith and fair dealing, tortious interference with a contract, waste, breach of fiduciary duty, and shareholder oppression. The Plaintiffs also seek an accounting, judicial dissolution, and injunctive relief. In support of the Complaint, the Plaintiffs submit and state the following:

<u>**PARTIES, JURISDICTION, AND VENUE**</u>

1.     Cheryl Kollin ("Dr. Kollin") was at all times relevant herein a resident of Maricopa County, Arizona.

2.     Dr. Kollin is a naturopathic physician licensed in Arizona to diagnose conditions, treat patients, and to prescribe vaccines, antibiotics, and Federal Drug Administration controlled substances.

3.     Kollin Medical is an Arizona limited liability company legally authorized to conduct business in Arizona.

4.     Dr. Kollin is the sole member of Kollin Medical and is authorized to bring actions on its behalf.

5.     Brio is a Nevada corporation that is registered as a foreign entity, authorized to do business in Arizona under the name Brio-Medical, Inc, and has its principal place of business in Maricopa County, Arizona.

6.     Dr. Kollin is a shareholder in Brio, possesses 10.4 percent ownership of the company. As a shareholder, Dr. Kollin is authorized to bring this derivative action on its behalf.

7.     Dr. Kollin was employed as Brio's medical director from November 2019 until March 2022.

8.     Dr. Kollin also served as Brio's treasurer.

9.     Rusty Roberts ("Mr. Roberts") is, on information and belief, a resident of Arizona.

10.     Mr. Roberts was the chief executive officer of Brio from sometime prior to Ms. Kollin's employment at Brio until January 2021.

11.     At all times relevant herein, Mr. Roberts was a shareholder of Brio.

12.     At all times relevant herein, Mr. Roberts was a member of Brio's board of directors.

13.     Nichole Roberts ("Ms. Roberts") is, on information and belief, a resident of Arizona.

14.     At all times relevant herein, Ms. Roberts was a shareholder of Brio.

15.     At all times relevant herein, Ms. Roberts was a member of Brio's board of directors.

16.     On information and belief, Mr. Roberts and Ms. Roberts are married to each other.

17.     Jason DeMartino ("Mr. DeMartino") is, on information and belief, a resident of California.

18.     At all times relevant herein, Mr. DeMartino was a shareholder of Brio.

19.     At all times relevant herein, Mr. DeMartino was a member of Brio's board of directors.

20.     On information and belief, Mr. DeMartino is the brother of Ms. Roberts and brother-in-law of Mr. Roberts.

3

21.     At all times relevant herein, Mr. DeMartino was chief operating officer of Brio until January 2021 when he replaced Mr. Roberts as Brio's chief executive officer.

22.     All acts, agreements, and contracts hereinafter alleged were to be substantially performed, and completed in, Maricopa County, Arizona.

23.     All below-named employees or agents of the Defendants are intended to represent individuals acting either in their individual capacities, or as agents, representatives, directors, shareholders, or employees duly authorized and were acting within their employment with regards to the transactions hereinafter alleged.

24.     Jurisdiction and venue pursuant to 42 U.S.C. § 2000e-5(f)(3) are appropriate in this Court.

## GENERAL ALLEGATIONS

25.     Brio filed its Articles of Incorporation in the State of Nevada on December 27, 2013.

26.     Brio adopted its bylaws on December 27, 2013 (the "Bylaws").

27.     Article VII, Section 1 of the Bylaws provide that Brio shall indemnify officers, directors, and employees who are a party, or is threatened to be made a party to, or is involved in "any action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that he . . . is or was serving at the request of [Brio] or for its benefit . . . ."

28.     At all times relevant herein, Brio has had 75,000 shares of stock.

29.     Kollin Medical filed its Articles of Organization in the State of Arizona on August 20, 2014.

30.     On or about October 18, 2019, Dr. Kollin and Brio entered into an employment agreement (the "Agreement"). A true and correct copy of the Agreement is attached as **Exhibit A**.

31.     The Agreement provided that Brio would pay Dr. Kollin an annualized salary of $225,000 in bi-weekly installments.

32.     The Agreement provided that Dr. Kollin would "receive a seat on the board of directors with 5% company stock in [Brio] after a 6-month probationary period is successfully completed," which amounts to 3,750 shares ("Employment Shares").

33.     On or around October 18, 2019, Mr. Roberts and Dr. Kollin signed the Agreement.

34.     Dr. Kollin began work on or around November 4, 2019.

35.     At all times relevant herein, Dr. Kollin worked an average of 65 hours a week for Brio.

36.     However, Brio failed to pay Dr. Kollin what she was owed under the Agreement and underpaid her every pay period from November 30, 2020 through March 31, 2022.

37.     Brio failed to pay any wages to Dr. Kollin for the period of February 1, 2020 through February 15, 2020.

38.     On March 3, 2020, Brio and Dr. Kollin entered into a stock purchase agreement ("Stock Agreement"). A true and correct copy of the Stock Agreement is attached as **Exhibit B**.

39.     As part of the Stock Agreement between Brio and Dr. Kollin, Brio agreed to "pay the monthly cost of the loan that [Dr. Kollin] has taken out to purchase these 4050 shares in [Brio]" upon Dr. Kollin's payment of $135,000.

40.     To fulfill Dr. Kollin's obligation of $135,000 under the Stock Agreement, Kollin Medical obtained a loan from Bankers Healthcare Group, LLC for $151,495 (the "Loan").

41.     The Loan's terms and conditions provide that Kollin Medical must make 120 payments of $2,261.09 each, for a total sum of $271,330.80.

42.     Dr. Kollin is the personal guarantor of that Loan, and she has individually assumed that Loan from Kollin Medical.

43.     Under the Stock Agreement, Dr. Kollin agreed to convey $135,000 to Brio in return for 4,050 shares ("Purchased Shares") for a total of 7,800 common shares and 10.4 percent ownership of Brio.

44.     Under the Stock Agreement, Brio and Dr. Kollin agreed that Dr. Kollin would acquire both the Employment Shares and the Purchased Shares immediately upon Brio's receipt of $135,000. The Stock Agreement makes no reference to vestment of those shares.

45.     By March 17, 2020, Brio received $135,000 from Kollin Medical.

46.     On March 17, 2020, Brio issued a certificate of 7,800 common shares to Dr. Kollin.

47.     However, Brio failed to convey to Dr. Kollin payments of $2,261.09 in or around: December 2020, January 2021, and December 2021.

48.     Dr. Kollin has maintained healthcare practitioner accounts with virtual wholesale dispensaries Fullscript, Wholescripts, and Pronuvia (each, a "Wholesale Dispensary", and together, "Wholesale Dispensaries").

49.     An account with a Wholesale Dispensary allows a licensed healthcare practitioner to receive a small amount of money in return for a patient's order of vitamins or supplements.

50.     On information and belief, Wholesale Dispensaries contract only with individuals who are healthcare practitioners, such as Dr. Kollin, and do not contract with healthcare entities, such as Brio.

51.     In addition to the Loan that Dr. Kollin obtained for Brio's benefit, Dr. Kollin personally donated money that she received from her accounts with Wholesale Dispensaries to Brio to help the company succeed.

52.     Dr. Kollin joined Brio's board of directors before or by April 2020.

53.     From the time Dr. Kollin joined the board of directors as treasurer, Mr. Roberts and Mr. DeMartino refused, and continue to refuse, to allow Dr. Kollin to inspect the company's budget and finance information beyond a profit and loss statement.

54.     Brio failed to pay any wages to Dr. Kollin for the period of November 16, 2020 through November 30, 2020.

55.     During the period of her employment, Dr. Kollin repeatedly notified Mr. Roberts and Mr. DeMartino that Brio had not paid her wages according to the Agreement, including multiple instances whereupon Brio failed to pay her any money at all.

56.     In or around November 2020, Mr. Roberts approached Dr. Kollin and

ordered her to sign a "Shareholders Agreement."

57.     This Shareholders Agreement would convert Dr. Kollin's vested shares in Brio into unvested shares and subject her to new terms and conditions whereupon Mr. Roberts, Ms. Roberts, or Mr. DeMartino could unilaterally terminate her privileges as a shareholder. No other shareholder was required to sign such an agreement.

58.     Dr. Kollin refused to sign the Shareholders Agreement.

59.     In January 2021, Brio hired a consultant (hereinafter, the "Consultant") whose job was, according to Mr. Roberts, to "turn the business around" and grow its business.

60.     In early 2021, the Consultant learned that Brio underpays Dr. Kollin and advised her to cease donating any money she earned through Wholesale Dispensaries to the company until Brio paid Dr. Kollin what it owed under the Agreement.

61.     In early 2021, Dr. Kollin informed Mr. DeMartino that she would no longer donate to the company in the equivalent amount of her proceeds from her accounts with Wholesale Dispensaries.

62.     In March 2021, the Consultant advised Brio's directors that James Roberts, Drake Roberts, Rusty Jay Roberts, Mr. Roberts, and Mr. DeMartino were overpaid, and asked to review the company's financial data for additional cost savings.

63.     Mr. Roberts told Dr. Kollin, "This is bad. [The Consultant] is going to learn the company's secrets."

64.     James Roberts, Drake Roberts, and Rusty Jay Roberts are, or were, employees of the company.

COUNXEL
LEGAL FIRM

65.     James Roberts is the brother of Mr. Roberts.

66.     Drake Roberts is the nephew of Mr. Roberts.

67.     Rusty Jay Roberts is the son of Mr. Roberts and Ms. Roberts.

68.     The board of directors held a vote whether to terminate the Consultant's contract with Brio, and the board agreed that her recommendations and inquiry were proper and voted not to terminate the contract.

69.     Upon information and belief, in a phone call between Dr. Kollin and Mr. Roberts, Ms. Roberts, and Mr. DeMartino held the next day, the director Defendants decided to fire the Consultant anyway.

70.     In that same call, Mr. Roberts, Ms. Roberts, and Mr. DeMartino told Dr. Kollin that Brio would correct the previous missing and insufficient wages which Brio owed to Dr. Kollin.

71.     In or around January 2022, Defendants Mr. Roberts and Mr. DeMartino ordered Dr. Kollin to rotate nursing shifts.

72.     Dr. Kollin refused for legitimate medical reasons related to staffing coverage, posing a danger to patients and financial liability to Brio should malpractice result.

73.     In January 2022, because she refused to change the nursing rotations, Mr. Roberts and Mr. DeMartino entered Dr. Kollin's office and gave her a written warning for refusing to follow the directions of other members of the board of directors.

74.     Mr. Roberts and Mr. DeMartino's decision to punish Dr. Kollin was made without quorum or approval from the board of directors.

75.     On January 30, 2022, Dr. Kollin notified Mr. Roberts and Mr. DeMartino in writing that Brio owed her wages, thereby asserting her rights under 29 U.S.C. § 215(a)(3).

76.     On or around March 15, 2022, Brio terminated Dr. Kollin's employment in a meeting of the board of directors.

77.     At a board of directors meeting on March 15, 2022, Mr. Roberts told Dr. Kollin that her employment was terminated.

78.     The stated reason for Dr. Kollin's discharge was failure to create advertising materials.

79.     Dr. Kollin was directed to inform co-workers and patients that she had voluntarily quit.

80.     At that same meeting of the board of directors held on March 15, 2022, Mr. Roberts told Dr. Kollin that Brio may or may not continue to honor its obligations to pay $2,261.09 each month to Dr. Kollin if Brio has the money.

81.     Upon information and belief, Brio replaced Dr. Kollin with a new medical director within a month of the board meeting and hired that person at a salary of at least $325,000.

82.     On or shortly after April 14, 2022, Brio received from Dr. Kollin a demand letter for wages owed as a result of Brio's breach of the Agreement ("Demand Letter").

83.     On April 22, 2022, Brio sent a letter (the "Brio Letter") to Dr. Kollin stating it will no longer honor its obligations under the Stock Agreement unless Dr. Kollin gives Brio access to her practitioner accounts with Wholesale Dispensaries and to pay Brio all money received from those accounts.

84.     In that Brio Letter, Brio stated that it is reporting "theft" of money derived from Dr. Kollin's professional accounts with the Wholesale Dispensaries to "the police and the Arizona State attorney" [sic].

85.     On or around April 22, 2022, the Defendants attempted to use the unsigned and unapproved Shareholders Agreement to remove Dr. Kollin as a minority shareholder in Brio.

86.     On April 29, 2022, Dr. Kollin was notified through her representative counsel in Naturopathic Physicians Medical Board actions that Brio would no longer indemnify her defense, as required in its bylaws.

87.     All conditions precedent to this lawsuit have been satisfied or have occurred.

**COUNT ONE**
**BREACH OF CONTRACT**
**(Dr. Kollin against Brio)**

88.     The Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

89.     Under the Agreement, Brio agreed to pay Dr. Kollin an annualized salary of $225,000 in bi-weekly installments.

90.     Brio failed to pay Dr. Kollin what she was owed under the Agreement and underpaid the Plaintiff from November 30, 2020 through March 31, 2022.

91.     Brio breached the Agreement with Dr. Kollin.

92.     Dr. Kollin consistently brought up Brio's breach of her employment agreement with Brio leadership, such as Mr. Roberts and Mr. DeMartino, and each time was told by Brio that it would correct the mistake and re-pay her what she was owed.

COUNXEL
LEGAL FIRM

93.     Dr. Kollin was most recently told by Brio that it would correct its breach in 2022.

94.     Dr. Kollin has been damaged by Brio's breach of the Agreement in an amount to be proved at trial, but no less than $150,000.

95.     Thus, Dr. Kollin may recover from Brio for breach of contract.

**COUNT TWO**
**FAIR LABOR STANDARDS ACT – MINIMUM WAGE**
**(Dr. Kollin against Brio)**

96.     The Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as though full set forth herein.

97.     Brio failed to pay any wages to Dr. Kollin for the period of February 1, 2020 through February 15, 2020.

98.     Brio failed to pay any wages to Dr. Kollin for the period of November 16, 2020 through November 30, 2020.

99.     Over the course of her employment, Dr. Kollin had repeatedly notified Brio of the underpayments and its obligation to pay her per the Agreement, but Brio ignored her complaints.

100.    Brio willfully violated 29 U.S.C. § 201, *et seq.*, by failing to pay Dr. Kollin a minimum wage.

101.    Dr. Kollin has been damaged by Brio's failure to pay overtime wages in an amount to be proved at trial, but no less than $20,000.

102.    Thus, Dr. Kollin may recover for Brio's violation 29 U.S.C. § 201, *et seq.*

COUNXEL
LEGAL FIRM

**COUNT THREE**
**FAIR LABOR STANDARDS ACT – OVERTIME PAY**
**(Dr. Kollin against Brio)**

103.     The Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as though full set forth herein.

104.     Brio failed to pay any wages to Dr. Kollin for the period of February 1, 2020 through February 15, 2020.

105.     Brio failed to pay any wages to Dr. Kollin for the period of November 16, 2020 through November 30, 2020.

106.     Over the course of her employment, Dr. Kollin had repeatedly notified Brio of the underpayments and its obligation to pay her per the Agreement, but Brio ignored her complaints.

107.     Brio willfully violated 29 U.S.C. § 201, *et seq.*, by failing to pay at least 1.5 times Dr. Kollin's regular rate of pay for all time worked in excess of 40 hours in one workweek.

108.     Dr. Kollin has been damaged by Brio's failure to pay overtime wages in an amount to be proved at trial, but no less than $20,000.

109.     Thus, Dr. Kollin may recover for Brio's violation 29 U.S.C. § 201, *et seq.*

**COUNT FOUR**
**ARIZONA REVISED STATUTES § 23-363 – MINIMUM WAGE**
**(Dr. Kollin against Brio)**

110.     Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

111.    Brio's failure to pay wages from February 1, 2020 through February 15, 2020 and from November 16, 2020 through November 13, 2020 violates A.R.S. § 23-363 by failing to pay Dr. Kollin even a minimum wage as required under Arizona law.

112.    Over the course of her employment, Dr. Kollin had repeatedly notified Brio of the non-payments and its obligation to pay her per the Agreement, but Brio ignored her complaints.

113.    Dr. Kollin has been damaged by this violation in an amount to be proved at trial.

114.    Thus, Dr. Kollin may recover from Brio for willful violation of A.R.S. § 23-363.

## COUNT FIVE
## FAIR LABOR STANDARDS ACT – RETALIATION
### (Dr. Kollin against Brio)

115.    Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

116.    As set forth above, Dr. Kollin repeatedly notified Mr. Roberts and Mr. DeMartino that Brio had not paid her wages according to the Agreement, including multiple instances whereupon Brio failed to pay her any money at all.

117.    On January 30, 2022, Dr. Kollin notified Mr. Roberts and Mr. DeMartino that Brio owed her wages, thereby asserting her rights under 29 U.S.C. § 215(a)(3).

118.    At a board of directors meeting on March 15, 2022, Mr. Roberts told Dr. Kollin that her employment was terminated.

COUNXEL
LEGAL FIRM

119.   The stated reason for Dr. Kollin's discharge was failure to create advertising materials.

120.   Brio's stated reason for discharge was merely a pretext to avoid liability under 29 U.S.C. § 215(a)(3).

121.   Dr. Kollin has been damaged by Brio's retaliation in an amount to be proved at trial.

122.   Thus, Dr. Kollin may recover from Brio for its retaliation.

## COUNT SIX
### ARIZONA REVISED STATUTES § 23-364 – RETALIATION
### (Dr. Kollin against Brio)

123.   Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

124.   Dr. Kollin complained of Brio's failure to pay her wages.

125.   Brio fired Dr. Kollin in retaliation for her complaint 44 calendar days later.

126.   By Brio terminating Dr. Kollin's employment less than 90 days after Dr. Kollin reported a violation of A.R.S. § 23-363, retaliation under A.R.S. § 23-364 (B) is presumed.

127.   Brio violated A.R.S. § 23-364 (B) and retaliated against Dr. Kollin.

128.   Brio's stated reason for termination of employment was a pretext to avoid liability under A.R.S. § 23-363.

129.   Dr. Kollin has been damaged by this violation in an amount to be proved at trial.

130.   Thus, Dr. Kollin may recover from Brio for violation of A.R.S. § 23-364.

COUNXEL
LEGAL FIRM

**COUNT SEVEN**
**ANTICIPATORY REPUDIATION**
**(Dr. Kollin and Kollin Medical against Brio)**

131.    Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

132.    Kollin Medical obtained its Loan from Bankers Healthcare Group, LLC for $151,495.

133.    The Loan's terms and conditions provide that Kollin Medical must make 120 payments of $2,261.09 each, for a total sum of $271,330.80.

134.    Dr. Kollin is the guarantor of that Loan and has assumed the Loan from Kollin Medical.

135.    As part of the Stock Agreement between Brio and Dr. Kollin, Brio agreed to "pay the monthly cost of the loan that [Dr. Kollin] has taken out to purchase these 4050 shares in [Brio]" upon Dr. Kollin's payment of $135,000.

136.    As described above, Dr. Kollin conveyed $135,000 to Brio by March 17, 2020.

137.    Brio failed to convey to Dr. Kollin payments of $2,261.09 in December 2020, January 2021, and December 2021.

138.    On March 15, 2022, Mr. Roberts told Dr. Kollin that Brio may or may not continue to honor its obligations to pay $2,261.09 each month to Dr. Kollin if Brio has the money.

139.    In the Brio Letter sent on April 22, 2022, Brio stated that it will no longer honor its obligations under the Stock Agreement unless Dr. Kollin gives Brio access to her

practitioner accounts with Wholesale Dispensaries and to pay Brio all money received from those accounts.

140.    Threatening an act that would breach contract obligations is anticipatory repudiation and constitutes a species of breach of contract under Arizona law. *See, e.g.*, *Snow v. Western Sav. & Loan Ass'n*, 152 Ariz. 27, 32, 730 P.2d 204, 210 (1986) (citations omitted).

141.    Brio has anticipatorily repudiated the Stock Agreement.

142.    Dr. Kollin and Kollin Medical have been damaged by Brio's anticipatory repudiation in an amount to be proved at trial.

143.    Thus, Dr. Kollin and Kollin Medical may recover from Brio for its breach of contract.

<u>**COUNT EIGHT**</u>
**UNJUST ENRICHMENT**
**(Dr. Kollin and Kollin Medical against Brio)**

144.    Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

145.    In the alternative, if the contract in Count Six is unenforceable, Brio has been wrongfully enriched to the detriment of Dr. Kollin and Kollin Medical.

146.    Dr. Kollin and Kollin Medical have been impoverished as a direct and proximate result of the actions of Brio.

147.    There is a direct connection between Brio's enrichment and Dr. Kollin's and Kollin Medical's impoverishment.

148.    There is no lawful justification for the enrichment and impoverishment.

149.   Dr. Kollin and Kollin Medical have no other legal remedy than this Complaint to redress the harm.

150.   Dr. Kollin and Kollin Medical have been damaged by Brio in an amount to be proved at trial but no less $370,000.

151.   Thus, Dr. Kollin and Kollin Medical may recover from Brio for Brio's unjust enrichment.

**COUNT NINE**
**BREACH OF GOOD FAITH AND FAIR DEALING**
**(Dr. Kollin against Brio)**

152.   Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

153.   Brio owes a duty of good faith and fair dealing to Dr. Kollin not to impair her right to receive the benefits which flow from the Stock Agreement. *Cf. Rawlings v. Apodaca*, 151 Ariz. 149, 153, 726 P.2d 565, 569 (1986) (citations omitted).

154.   Brio's anticipatory breach of the Stock Agreement is a calculated attempt to monetarily injure Dr. Kollin and to smother her claim for breach of contract under the Agreement.

155.   Brio's actions breach the implied covenant of good faith and fair dealing in the Stock Agreement.

156.   Dr. Kollin has suffered damages as a direct and proximate result of the actions of Brio in an amount to be proven at trial.

157.   Thus, Dr. Kollin may recover from Brio for breach of good faith and fair dealing.

**COUNT TEN**
**INJUNCTIVE RELIEF**
**(Dr. Kollin and Kollin Medical against Brio)**

158.   Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

159.   Kollin Medical has incurred and will continue to suffer further and substantial irreparable injury as Brio's anticipatory breach of the Stock Agreement will force Kollin Medical to default on its loan.

160.   As Dr. Kollin is the sole member of Kollin Medical, LLC, Brio's actions irreparably harm her as well.

161.   By defaulting on the loan, Dr. Kollin may lose her personal assets, car, and home and her livelihood will be destroyed.

162.   A remedy at law is inadequate to fully compensate Dr. Kollin or Kollin Medical for its injuries and threatened injuries.

163.   Injunctive relief is appropriate pursuant to A.R.S. §§ 12-1801, *et seq.*

164.   Thus, Dr. Kollin and Kollin Medical may obtain injunctive relief to enjoin the Defendants from repudiating their agreement with the Plaintiffs.

**COUNT ELEVEN**
**BREACH OF CONTRACT**
**(Kollin Medical against Brio)**

165.   Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

166.   Kollin Medical directly benefits from the Stock Agreement between Brio and Dr. Kollin.

19

167.    The parties to that Stock Agreement intended to recognize Kollin Medical as the primary party in interest.

168.    Brio is in anticipatory breach of the Stock Agreement.

169.    Kollin Medical alleges that this breach has resulted in damages to Kollin Medical in an amount to be proved at trial.

170.    Thus, Kollin Medical may recover from Brio for breach of contract.

## COUNT TWELVE
### UNJUST ENRICHMENT
### (Brio against Mr. Roberts, Ms. Roberts, and Mr. DeMartino)

171.    Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

172.    Mr. Roberts, Ms. Roberts, and Mr. DeMartino have been wrongfully enriched to the detriment of Brio.

173.    Brio has been impoverished as a direct and proximate result of the actions of Mr. Roberts, Ms. Roberts, and Mr. DeMartino.

174.    There is a direct connection between the enrichment of Mr. Roberts, Ms. Roberts, and Mr. DeMartino and Brio's impoverishment.

175.    There is no lawful justification for the enrichment and impoverishment.

176.    Brio has no legal remedy.

177.    Brio has suffered damages as a direct and proximate result of the actions of Mr. Roberts, Ms. Roberts, and Mr. DeMartino.

## COUNT THIRTEEN
### CORPORATE WASTE
### (Brio against Mr. Roberts, Ms. Roberts, and Mr. DeMartino)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

COUNXEL
LEGAL FIRM

178. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

179. The claim of unjust enrichment against Mr. Roberts, Ms. Roberts, and Mr. DeMartino for restitution of monies paid to them constitutes a valuable asset of the company which Dr. Kollin is duty-bound to pursue.

180. Mr. Roberts, Ms. Roberts, and Mr. DeMartino are obliged to take all steps necessary to make restitution to the company for all payments and benefits paid to them for which they were unjustly enriched.

181. Mr. Roberts, Ms. Roberts, and Mr. DeMartino failure to do so constitutes waste of a valuable corporate asset, and violates their duty to exercise good faith in preserving the company's assets.

182. Mr. Roberts, Ms. Roberts, and Mr. DeMartino failure to seek and provide restitution is particularly unwarranted and inexcusable in light of the following:

a. Mr. Roberts, Ms. Roberts, and Mr. DeMartino refused and continue to refuse to allow Dr. Kollin, who has been a treasurer of the board of directors since 2020, to inspect the company's budget and finance information beyond a profit and loss statement.

b. In March 2021, the Consultant advised that James Roberts, Drake Roberts, Rusty Jay Roberts, Mr. Roberts, and Mr. DeMartino were overpaid, and asked to review the company's financial data for additional cost savings.

c. Mr. Roberts told Dr. Kollin, "This is bad. [The Consultant] is going to learn the company's secrets."

d.     As set forth above, James Roberts, Drake Roberts, and Rusty Jay Roberts are, or were, employees of the company and close relatives of Mr. and Ms. Roberts.

e.     The board of directors held a vote whether to terminate the Consultant's contract with Brio, and the board agreed her recommendations and inquiry were proper and voted not to terminate the contract.

f.     Later that same day, in a phone call between Dr. Kollin, Mr. Roberts, Ms. Roberts, and Mr. DeMartino, the three defendants decided to fire the Consultant's anyway.

183.   Mr. Roberts, Ms. Roberts, and Mr. DeMartino's actions amount to illegal or improper business practices and Brio suffered, and continues to suffer, enormous monetary damages and incalculable harm to its reputation.

184.   As a result of Mr. Roberts, Ms. Roberts, and Mr. DeMartino's waste of a valuable asset of Brio, the company has sustained damage measured by the amount of restitution, with interest, such defendants should make to Brio in an amount to be proved at trial.

185.   Thus, Brio may recover from Mr. Roberts, Ms. Roberts, and Mr. DeMartino for corporate waste.

**COUNT FOURTEEN**
**BREACH OF FIDUCIARY DUTY**
**(Brio against Mr. Roberts, Ms. Roberts, and Mr. DeMartino)**

186.   Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

187.   As set forth above, Mr. Roberts, Ms. Roberts, and Mr. DeMartino refuse to allow Dr. Kollin to access to the company's budget and all other pertinent financial

information.

188.   In or around January 2022, Defendants Mr. Roberts and Mr. DeMartino ordered Dr. Kollin to rotate nursing shifts.

189.   Dr. Kollin refused for legitimate medical reasons related to staffing coverage, posing a danger to patients and financial liability to Brio should malpractice result.

190.   In January 2022, Mr. Roberts and Mr. DeMartino entered Dr. Kollin's office and gave her a written warning for refusing to follow the directions of other members of the board of directors.

191.   Mr. Roberts and Mr. DeMartino's decision to punish Dr. Kollin was made without quorum or approval from the board of directors.

192.   A director of a company owes a duty of care to the company and other shareholders. This duty comprises the duty to refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of the law.

193.   Mr. Roberts, Ms. Roberts, and Mr. DeMartino have breached their duty of care to the company because they have actively pursued actions that rise to civil liability and punished Dr. Kollin for following the law and protecting the company.

194.   As a result, Brio has suffered damages in an amount to be proven at trial.

195.   Thus, Brio may recover from Mr. Roberts, Ms. Roberts, and Mr. DeMartino for breach of fiduciary duty.

**COUNT FIFTEEN**
**BREACH OF CONTRACT**
**(Brio against Mr. Roberts, Ms. Roberts, and Mr. DeMartino)**

196.   Plaintiffs incorporate by reference each and every allegation contained in the

23

preceding paragraphs as though fully set forth herein.

197.   The bylaws of Brio, Inc. is a contract between the shareholders of a corporation and between the shareholders and the corporation.

198.   The Defendants have breached the bylaws of Brio, Inc.

199.   On information and belief, the breaches include, but are not limited to:

a.   Making or repudiating loans without prior, proper approval;

b.   Commingling funds;

c.   Interfering with the Plaintiff's unfettered fiduciary right to inspect records;

d.   Failing to provide timely and regular financial information to the Plaintiff;

e.   Self-dealing;

f.   Failing to provide notice of meetings;

g.   Failing to provide financial records;

h.   Failing to provide reports of meetings.

200.   The breaches of contract were a direct and proximate cause of damages to the Plaintiff as described above in an amount to be proven at trial.

201.   Thus, the Plaintiffs may recover from the Defendants for breach of contract.

**COUNT SIXTEEN**
**SHAREHOLDER OPPRESSION**
**(Dr. Kollin and Brio against Defendants)**

202.   Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

203.   In or around November 2020, Mr. Roberts approached Dr. Kollin and ordered her to sign the Shareholders Agreement.

204. This Shareholders Agreement would convert Dr. Kollin's vested shares in Brio into unvested shares and subject her to new terms and conditions whereupon Mr. Roberts, Ms. Roberts, or Mr. DeMartino could unilaterally terminate her privileges as a shareholder.

205. Dr. Kollin refused to sign the Shareholders Agreement.

206. On or around April 22, 2022, the Defendants attempted to use the unsigned Shareholders Agreement to remove Dr. Kollin as a minority shareholder.

207. Brio's actions are illegal, oppressive, and fraudulent to the Plaintiff as a shareholder in violation of A.R.S. § 10-1430 (B)(2).

208. Plaintiffs Dr. Kollin and Brio request damages in an amount to be proven at trial and equitable relief as follows:

a. Mr. Roberts', Ms. Roberts', and Mr. DeMartino's voting rights be suspended;

b. Mr. Roberts, Ms. Roberts, and Mr. DeMartino be removed from any positions in Brio and any further exercise of authority on behalf of Brio be addressed with contempt proceedings;

c. Defendants be prohibited from using corporate funds to finance this case;

d. Defendants be required to pay for a valuation of Brio in the Court that the Court finds such a valuation necessary or appropriate; and

e. A receiver and/or keeper be appointed at Mr. Roberts', Ms. Roberts', and Mr. DeMartino's expense to protect Brio's assets.

209. In the event relief is only available to Dr. Kollin individually and not on a

derivative basis, Dr. Kollin requests money damages in an amount to be proven at trial, judicial dissolution of the company, attorneys' fees, costs, and all equitable, legal, and related remedies.

210.    In addition to any remedies set forth above, Defendants acted with oppression, fraud or malice, and based thereon Plaintiffs request punitive damages.

## COUNT SEVENTEEN
### ACCOUNTING
### (Plaintiffs against Defendants)

211.    Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

212.    Defendants' misappropriations of funds and use of funds for personal purposes, an accounting is necessary to arrive at an amount of damages owed to all Plaintiffs.

213.    Plaintiffs' legal remedies are inadequate.

214.    Much of the information necessary to arrive at a calculation of the Plaintiffs damages is within the exclusive control and knowledge of the Defendants.

215.    Thus, a judicial accounting is appropriate in this matter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.    For all damages as permitted by law including but not limited to compensatory damages, consequential damages, punitive damages, incidental damages, statutory damages, liquidated damages, and any other damages allowed by law in the aggregate amount of at least five-million dollars ($5,000,000.00);

B.      For interest at the highest rate allowed by law from the earliest time permitted by law until the judgment is paid in full;

C.      For all remedies as permitted in equity including injunctions, accountings, specific performance, and any other equitable remedies allowed by law.

D.      For attorneys' fees and costs as provided by law or by statute;

E.      For prejudgment and post-judgment interest in the highest amount allowed by law; and,

F.      For such other and further relief as may be just and proper in law and equity.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 22nd  day of September, 2022.

COUNXEL LEGAL FIRM

*/s/Patrick Welsh*
Patrick Welsh
2222 S. Dobson Rd. Suite 1104
Mesa, AZ  85202
*Attorney for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

## **CERTIFICATE OF SERVICE**

  I hereby certify that on September 22, 2022, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing and transmittal of Notice of Electronic Filing to the following CM/ECF Registrant:

*/s/ Carolyn Button*

COUNXEL
LEGAL FIRM