**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cheryl Kollin, et al., | No. CV-22-01610-PHX-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| Brio Incorporated, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion to Dismiss First Amended Complaint for Failure to State a Claim and for Lack of Subject Matter Jurisdiction. (Doc. 18). Plaintiffs have filed a response. (Doc. 20). Defendants have filed a reply. (Doc. 23). This Court will now rule.

**I.   BACKGROUND**

Dr. Cheryl Kollin worked for Brio Medical as medical director and treasurer from November 2019 to March 2022. (Doc. 11 at 3). She is a licensed naturopathic physician who has the authority to "diagnose conditions, treat patients, and to prescribe vaccines, antibiotics, and Federal Drug Administration controlled substances." (*Id.* at 2). As part of her employment agreement with Brio, Dr. Kollin was to be paid "an annualized salary of $225,000 in bi-weekly installments." (*Id.* at 5). She was also given a seat on the board and five percent of the company stock. (*Id.*). She alleges that she worked an average of sixty-five hours per week, but was underpaid for every pay period between November 30, 2020, through March 31, 2022. She further claims that she received no wages between February

1, and February 15, 2020. (*Id.*). She was again not paid, she claims, from November 16 to November 30, 2020. (*Id.* at 7).

Less than four months after Dr. Kollin started with Brio, she took out a loan, through her LLC Kollin Medical, to purchase additional shares in Brio. (*See id.* at 6). As part of this transaction, Brio entered into a stock agreement with Dr. Kollin in which it agreed to pay the "monthly cost of the loan" upon receipt of the money loaned. (*Id.*). Brio failed to pay these monthly payments for December 2020, January 2021, and December 2021. (*See id.*). On March 15, 2022, Dr. Kollin was fired by Brio for "failure to create advertising materials." (*Id.* at 10). Brio then notified her that it would no longer be making the payments on the loan. (*See id.* at 11).

In September of 2022, Dr. Kollin filed a complaint alleging violation of the minimum wage, overtime, and retaliation provisions of the FLSA. (*Id.* at 12–13). Additionally, she brought a number of state law claims, both personal and derivative as a shareholder of Brio Medical, for breach of contract, violation of state labor laws, and other breaches of fiduciary duties. (*See id.* 15–26).

**II.   LEGAL STANDARD**

   **a.   Rule 12(b)(6)**

A complaint or claim can be dismissed under Rule 12(b)(6) either because it lacks "a cognizable legal theory" or because there are no "sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Heatlhcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)) (internal quotations omitted). In determining whether a complaint states a claim under this standard, the Court regards the allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmovant. *See Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement "need only give the defendant fair notice of what … the claim is and the grounds upon which it rests," but "[s]pecific facts are not necessary." *Erickson v.*

*Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks omitted). To survive a motion to dismiss, a complaint must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This means that the Plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (to survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face").

**b. FLSA Exceptions**

The FLSA, among other things, requires employers to pay their employees a minimum wage. *See* 29 U.S.C. § 206. It also requires payment of overtime if an employee works more than forty hours per week. *See* 29 U.S.C. § 207. Certain employees are exempt from these requirements, however. The Act provides that employers do not have to pay a minimum wage or overtime to "any employee employed in a bona fide executive, administrative, or professional capacity ...." 29 U.S.C. § 213. The Act gives the Secretary of Labor the authority to "define and delimit" those terms. *Id.* As set forth in the regulations, the term "professional capacity" includes "any employee who is the holder of a valid license or certificate permitting the practice of law or medicine or any of their branches and is actually engaged in the practice thereof." 29 C.F.R. § 541.304. Specifically, in the field of medicine, this applies to "physicians or other practitioners licensed and practicing in the field of medical science or healing ...." *Id.* The regulation goes on to list a number of the medical specialties included in this exemption. *Id.* The issue of whether an employee is exempt is a question of law, but the specifics regarding the employee's job responsibilities may involve fact questions. *See Adler v. SimonMed Imaging, Inc.*, 465 F.Supp.3d 953, 960 (D. Ariz. June 10, 2020). Furthermore, the employer bears the burden of showing that the exemption applies. *See id.* In doing this, the employer must show that the employee "[m]eets every requirement before the employee will be deprived of the protection of the Act." *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1125 (9th Cir. 2002) (internal quotations omitted).

### III. ANALYSIS

#### a. Minimum Wage and Overtime Protections

Dr. Kollin is a licensed physician in the state of Arizona, who is currently engaged in the practice of naturopathic medicine. Consequently, she is an "employee employed in a bona fide ... professional capacity" and thus cannot bring a minimum wage or overtime claim under the FLSA. The question of whether licensed naturopaths are "physicians or other practitioner" seems to be one of first impression in the 9th Circuit. Therefore, in order to determine whether such physicians are covered by the exemption, three words must be analyzed: medicine, branch, and practitioner. This Court finds that naturopathic medicine is included within "medicine" as that word is used in regulation. Further, naturopathic medicine is a "branch" of medicine, and Dr. Kollin is a "practitioner" of medicine. Thus, the exemption applies to her.

The exemption from mandatory minimum wages and overtime pay only applies to those who are licensed to practice "medicine" in their state. The word "medicine" encompasses much more than the modern healing sciences employed by Medical Doctors. Webster's Third International Dictionary defines it as "the science and art dealing with the maintenance of health and the prevention, alleviation, or cure of disease ...." *Medicine*, *Webster's Third New International Dictionary of the English Language* (1st ed. 1981). It thus generally covers most scientific practices relating to maintaining health and curing illness. This is confirmed by Black's Law Dictionary, which defines "medicine" as, "[t]he scientific study and practice of preserving heath and treating disease or injury; the science and art of preventing, curing, and alleviating sickness or affliction." *Medicine*, *Black's Law Dictionary* (11th ed. 2019). This definition is large enough to encompass naturopathic medicine. The Arizona Revised Statutes define the practice of naturopathic medicine as "a medical system of diagnosing and treating diseases, injuries, ailments, infirmities and other conditions of the human mind and body, including by natural means, drugless methods, drugs, nonsurgical methods, devices, physical, electrical, hygienic and sanitary measures and all forms of physical agents and modalities." A.R.S. § 32-1501(28). The dictionary

definitions of "medicine" and the statutory definition of the "practice of naturopathic medicine," overlap in significant respects. Consequently, this Court finds that medicine includes naturopathic medicine.

Although they overlap in general, as Plaintiff has argued, it could be that in the context of the regulation "medicine" is limited to the work of a licensed Medical Doctor. Thus, it is necessary to define the term "branch" as used in the regulation. As defined by Webster, "branch" means "a part of a complex body: as ... an area of knowledge that may be considered or studied apart from related areas[.]" *Branch*, *Webster's Third New International Dictionary of the English Language* (1st ed. 1981). It then gives "pathology" as an example of a branch of medicine. Thus, in order to be considered a branch of medicine, the area of knowledge must be a specific subset of medicine. It must involve a specific area of the healing arts that can be studied separately but that is still considered part of medicine generally. Again, looking to the definition of the "practice of naturopathic medicine" set forth in the Arizona Statutes, it would seem that naturopathic medicine is a "branch" of medicine. The functions and goals are all the same, its focus is on "diagnosing and treating" diseases and illness. Yet, it is specialized in that it utilizes different methods to achieve that result. Thus, it can be studied separately. Indeed, in order to be licensed to practice naturopathic medicine in Arizona, a prospective naturopath must "[b]e a graduate of an approved school of naturopathic medicine." A.R.S. §32-1522(A)(1). It therefore is a unique subset, or "branch," of medicine.

The exemption only applies to "physicians or other practitioners" of medicine, however. Therefore, this Court must determine whether Dr. Kollin is a physician or practitioner of medicine to see if she is exempt from the protections of the FLSA. First, Dr. Kollin could be understood to be a "physician" as that term is used in the regulations. Her complaint states that she is a "naturopathic physician licensed in Arizona ...." (Doc. 11 at 3). Thus, applying Dr. Kollin's own understanding of the term, it would seem that she would be classified as a physician under the FLSA. Even if physician is meant to be limited to traditional Medical Doctors, "other practitioners" is not. Turning again to Webster's, the

dictionary defines "practitioner" as "one that exercises an art, science, or profession (as law, medicine, or engineering) ...." *Practitioner*, Webster's Third New International Dictionary of the English Language (1st ed. 1981). Black's Law Dictionary defines it in much the same way. *See Practitioner*, *Black's Law Dictionary* (11th ed. 2019). Clearly then, Dr. Kollin is a practitioner of medicine. As stated in her complaint, Dr. Kollin was Brio's Medical Director. (Doc. 11 at 3). Further, she worked in this capacity an average of sixty-five hours per week, (*See id.* at 5), she maintained "healthcare practitioner accounts with virtual wholesale dispensaries" of supplements and vitamins, (*Id.* at 7), and was also in charge of nursing staff. (*Id.* at 9). During her time with Brio, then, the majority of Dr. Kollin's duties involved serving as a practitioner of medicine.

Dr. Kollin argues that naturopathic medicine is fundamentally different from traditional medicine, and therefore is not covered by the exemption. She raises five arguments. First, she claims that the licensing requirement in the regulation specifically concerns licenses to practice traditional medicine and not naturopathy. (*See* Doc. 20 at 4–5). Dr. Kollin asserts that licenses to practice traditional medicine are governed by Title 32 Chapter 13 of the Arizona Revised Statutes while licenses to practice naturopathic medicine are governed by Chapter 14. Consequently, she claims, for purposes of the FLSA, the two types of licenses must be treated differently and that the FLSA only covers licenses to practice traditional medicine.

While it may be true that Arizona law has separate provisions for each of these two types of licenses, this does not mean that both are not covered by the FLSA medical professional exemption. This is made clear by the context of the words "license" and "licensed" in the regulations. In the first instance the regulations state that an employee is exempt if he holds a "valid license" to practice "medicine or any of [its] ... branches ...." 29 C.F.R. § 541.304. Given the analysis above showing that naturopathic medicine is considered a branch of medicine, it would seem that naturopathic licenses are covered by the exemption. Second, the regulations state that the exemption covers "physicians or other practitioners licensed and practicing in the field of medical science or healing ...." *Id.* The

exemption is not limited to physicians. It extends to "other practitioners" and to those engaged in medical science or healing. Finally, nowhere do the regulations expressly limit licenses to licenses issued to medical doctors. "Medicine," therefore, seems to extend beyond the boundaries of traditional medicine to cover naturopaths.

Second, Dr. Kollin argues that the phrase "physicians or other practitioners" does not cover naturopaths." (Doc. 20 at 5). She claims that other statutes use "physician" or "physician or practitioner" to only refer to those licensed to practice traditional medicine. (*Id.* at 7). Consequently, she asserts, federal law "considers the two practices to be fundamentally distinct." (*Id.* at 8). Yet citation to the way in which other federal statutes have used these terms sheds little insight into how they are understood under the FLSA. More specifically, the FLSA regulations use the word "other" to modify "practitioners," suggesting that it covers non-physicians. Again, the analysis of "practitioners" above shows that naturopaths fit easily within its definition. Thus, this Court finds that naturopaths are "other practitioners" for purposes of this exemption.

Third, Dr. Kollin asserts that "case law, statutory law, administrative agency guidelines, and longstanding industry norms distinguish naturopathic physicians from physicians." (*Id.* at 5). She points to a number of cases and statutes from other contexts in which these two types of physicians were treated differently. (*See id.* at 7). Yet much like her prior arguments, all this proves is that these two professions have been treated differently in different contexts. In the FLSA context, however, the terms "medicine," "branch," and "practitioner," even when construed narrowly, are all still broad enough to include naturopaths. There is simply nothing in the regulations that would suggest that they do not apply to practitioners of naturopathic medicine. Simply because Medical Doctors and naturopaths use different techniques to achieve the same end does not mean that one is practicing medicine while the other is not. As Dr. Kollin stated in her own complaint, she has the authority to "diagnose conditions, treat patients, and to prescribe vaccines, antibiotics, and Federal Drug Administration controlled substances." (Doc. 11 at 2). These fields are not so different that they cannot both be considered "medicine" for purposes of

the FLSA.

Dr. Kollin also claims that naturopaths should be considered as part of the "other professions which service the medical profession." 29 C.F.R. § 541.600(e). First, Defendants are arguing that Dr. Kollin is exempt under 29 C.F.R. § 541.304 which is an exemption separate from the one set forth in § 541.600. Second, the only argument that Dr. Kollin puts forth in support of this contention is that there are numerous differences between naturopaths and Medical Doctors. (*See* Doc. 20 at 8–9). This hardly supports the claim that naturopaths are not medical professionals but rather service the medical profession. Therefore, this argument also fails.

Finally, Dr. Kollin claims that Defendants failed to show that naturopathic physicians are physicians under the FLSA because no factual or precedential support was provided. This question is one of first impression in the Circuit. Thus, there is no precedential support available. Other cases involving different statutes that may have treated these two types of physicians differently merely present persuasive support. The analysis above, coupled with the practices and procedures naturopaths are licensed and authorized to engage in, show that they should be treated the same as medical doctors under the FLSA regulations. Consequently, this Court finds that licensed naturopathic physicians are exempt from the minimum wage and overtime protections of the FLSA. Consequently, Dr. Kollin has failed to state a cognizable FLSA claim.

### b. Retaliation Claim

Because Dr. Kollin is not protected under the FLSA she cannot bring a successful retaliation claim against Defendants. The FLSA prohibits employers from "discharge[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding" to protect his rights under the FLSA. 29 U.S.C. § 215(a)(3). In order to bring a retaliation case, an employee must establish: 1. that he engaged in an activity protected under the FLSA, 2. that the defendant took an adverse employment action, and 3. that there was a causal link between the protected activity and the employment action. *Adler v. SimonMed Imaging*

*Inc.*, 465 F.Supp.3d 953, 975 (9th Cir. 2020). If, then, there is no protected activity, no retaliation claim can be brought.

In making this assessment, Plaintiff does not need to show that the allegedly unlawful employment practice was "demonstrably unlawful." *Schneider v. Scottsdale Unified School Dist. No. 48*, No. CV-21-01521, 2022 WL 901418, *3 (D. Ariz. Mar. 28, 2022). Plaintiff only needs to show that he had a "reasonable belief that the employer has engaged in an unlawful employment practice[.]" *Id.* (internal quotations omitted). That belief must be held in good faith. *See id.* at *6. This analysis also asks whether the employer's conduct fairly falls within the FLSA. *Id.* at *4–6. Thus, the standard for a retaliation claim under the FLSA has both a subjective and an objective component: the subjective asks whether there is a good faith belief, and the objective asks whether the conduct fairly falls within the FLSA. *Id.* at *6 (noting that while the Ninth Circuit has never specifically described the standard for FLSA retaliation claims in this way, caselaw suggests that this is the standard it applies).

There is no question in this case whether Defendants took an adverse employment action against Dr. Kollin. It is not disputed that Dr. Kollin was removed from her position as Medical Director of Brio on March 15, 2022. The key issue, then, is whether Dr. Kollin was engaging in a protected activity under the FLSA. *See id.* at *7 (stating that the first prong cannot be met if the employee is exempt because it cannot be shown, objectively, that the conduct fairly fell within the FLSA). Given the analysis above, Dr. Kollin was an exempt employee and therefore cannot bring a retaliation claim. Although there is no precedential case from the Ninth Circuit setting forth this standard, given the depth of analysis in *Schneider*, this Court finds it persuasive.

*Schneider* involved a schoolteacher who complained about not being paid for eight hours of work. *See id.* at *1. Plaintiff claimed that the school engaged in a number of retaliatory acts in response to her complaining to HR about the unpaid for time. *See id.* She was accused of insubordination and demoted. *See id.* After taking a medical leave of absence, she was given an ultimatum, which effectively forced her to resign from her

1  position. *See id.* She claimed that this was retaliation for her asserting her right to a
2  minimum wage under the FLSA. *See id.* The court found that although she may have
3  "honestly and in good faith believed that she was entitled to be paid and that Defendant's
4  refusal to do so was unlawful[,]" because she was exempt from the protections of the FLSA
5  as a school teacher, she could not show that she "reasonably believed" that Defendant's
6  conduct was unlawful. *See id.* at *7. The conduct did not "fairly fall" within the FLSA's
7  protection. *See id.* A good faith, subjective, belief is not enough. There must also be an
8  objective basis for thinking that the employee was engaging in a protected act.[1]

9  While it might have been the case that Dr. Kollin subjectively believed that her
10 actions were protected under the FLSA, because she is a medical practitioner, and thus an
11 exempt professional, there is not objective basis for such a belief. Thus, under the logic of
12 *Schneider* Dr. Kollin cannot bring a retaliation claim against Defendants. Consequently,
13 this Court will also dismiss her retaliation claim.

### c. Supplemental Jurisdiction Over State Law Claims

15 Finally, defendants assert that all of Plaintiffs' state law claims must be denied
16 because this Court does not have supplemental jurisdiction. (*See* Doc. 18 at 9). Because
17 this Court is dismissing all federal claims, there is no basis from which to assert jurisdiction
18 over the remaining state law claims. Accordingly, they are also dismissed. Supplemental
19 jurisdiction "does not—and cannot—operate to get a case into federal court." 13D Charles
20 Alen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3567 (3d ed. 2008)
21 (emphasis omitted). Rather there must be underlying federal claims that are so closely

---

[1] Other Ninth Circuit cases, in the Title VII context, which uses the same three-part standard, have interpreted the first prong more liberally. *See Maner v. Dignity Health*, 9 F.4th 1114, 1127 (9th Cir. 2021) (noting that, "our precedents have long recognized that the statute protects an employee who opposes employer conduct in the mistaken but reasonable belief that the conduct is unlawful."). Yet this statement was dicta, as the court went on to note that the case could be decided on other grounds. *See id.* Furthermore, other Title VII cases from the Ninth Circuit have stated that the protected conduct "must fairly fall within the protection of Title VII to sustain a claim of unlawful retaliation." *Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988). This "fairly fall" standard, the *Learned* Court noted, is a necessary component of reasonable belief. *See id.* Thus, an employee can only reasonably believe that his conduct is protected if it fairly falls within the protection of Title VII. Given that both Title VII and the FLSA use the same three-part test for retaliation claims, it is logical to use the "fairly fall" standard in assessing the first prong.

related to the state law claims that they are part of "the same constitutional 'case' or 'controversy.'" *See id.* As the statute states, "in any civil action of which *district courts have original jurisdiction*, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy ...." 28 U.S.C. § 1367(a) (emphasis added). There must then be an underlying basis for jurisdiction if a federal court is to hear state law claims. Because all of the Plaintiffs' federal claims are being dismissed, and there is no other basis for original jurisdiction in this Court, all of their state law claims will be dismissed.

### a. Motion for Leave to Amend

As part of their Response to Defendants' Motion to Dismiss, Plaintiffs attempt to move to amend their amended complaint should this Court decide to dismiss some or all of their claims. (*See* Doc. 20 at 16). If Plaintiffs wish to formally move to amend with this Court, they are required to do so in a separate motion. If Plaintiffs choose to do so, this Court will consider such a motion at the appropriate time.

## IV. CONCLUSION

Accordingly

**IT IS ORDERED** that Defendants' Motion to Dismiss the First Amended Complaint for Failure to State a Claim (part of Doc. 18) as to all federal claims is granted. Defendant's motion to dismiss the state law claims For Lack of Subject Matter Jurisdiction (part of Doc. 18) is granted. Plaintiff has 30 days from the date of this Order to file a motion to amend that complies with the Federal Rules of Civil Procedure and the Local Civil Rules.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**IT IS FURTHER ORDERED** that, if Plaintiff fails to file a motion to amend within the time limit set forth herein, the Clerk shall enter judgment dismissing the federal claims with prejudice and the state law claims without prejudice.

Dated this 14th day of June, 2023.

*James A. Teilborg*
Senior United States District Judge